IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 19-cv-02861-CMA-SKC

EIGHTH DISTRICT ELECTRICAL PENSION FUND,
EIGHTH DISTRICT ELECTRICAL PENSION FUND ANNUITY PLAN,
PATRICK CARLSON,
NATIONAL ELECTRICAL BENEFIT FUND, and
MOUNTAIN STATES LINE CONSTRUCTORS AREA JOINT APPRENTICESHIP AND
TRAINING TRUST FUND,

    Plaintiffs,

v.

GREEN ENERGY FOUNDATIONS, LLC,

    Defendant.

---

**ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
PURSUANT TO FED. R. CIV. P. 55(b)(1)**

---

This matter is before the Court on Plaintiffs' Motion for Default Judgment Pursuant to Fed. R. Civ. P. 55(b)(1) ("the Motion"). (Doc. # 10.) For the reasons that follow, the Court grants the Motion and enters default judgment in Plaintiffs' favor.

### I.    BACKGROUND

Plaintiffs Pension Fund, Annuity Plan, NEBF, and JATC (collectively "Plaintiff Funds") are each employee benefit plans established pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and are governed by Boards of Trustees consisting of management representatives and union representatives. (Doc. # 10 at 2.) Plaintiff Carlson is Secretary of the Delinquency

Committee for Plaintiff Eighth District Electrical Pension Fund, which also serves as the collections agent for Plaintiffs Annuity Plan, NEBF, and JATC pursuant to participation agreements between the Pension Fund and the other Plaintiff Funds. (*Id*.) Defendant Green Energy Foundations, LLC is a limited liability company organized under the laws of the State of Minnesota.

Plaintiffs initiated this suit on October 7, 2019, to collect delinquent fringe benefit contributions from Defendant pursuant to §§ 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145 respectively, and pursuant to collective bargaining agreements ("CBAs") between the Western Line Constructors' Chapter, NECA, and International Brotherhood of Electrical Workers Local Union No. 44, to which Defendant is a party by virtue of a letter of assent. (Doc. # 1 at 1–2.) Each Plaintiff Fund was established and operates pursuant to a Trust Agreement, which is incorporated by reference into the CBAs. (*Id*. at 4.)

Plaintiffs served Defendant on October 21, 2019. *See* (Doc. ## 6, 6-1). Defendant failed to file an answer or otherwise respond to the Complaint. The Clerk of this Court entered default on November 25, 2019. (Doc. # 9.) Plaintiffs filed the instant Motion on December 9, 2019, seeking delinquent principal contributions, interest on those delinquent contributions, liquidated damages, and audit costs. (Doc. # 10 at 7–8.) Defendant has not responded to Plaintiffs' Motion.

## II.      STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, courts must enter a default judgment against a party that has failed to plead or otherwise defend an action brought

against it. Fed. R. Civ. P. 55(b)(2). Default judgment may be entered by the clerk of court if the claim is for "a sum certain," Fed. R. Civ. P. 55(b)(1), in all other cases, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

> [D]efault judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment remedy serves as such a protection.

*In re Rains*, 946 F.2d 731, 732–33 (10th Cir. 1991) (internal quotation marks and citation omitted).

A default amounts to an admission of liability, and all well-pleaded allegations in the complaint pertaining to liability are deemed true. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (internal citation omitted); *Lyons P'ship, L.P. v. D&L Amusement & Entm't, Inc.*, 702 F. Supp. 2d 104, 109 (E.D.N.Y. 2010). "The Court also accepts as undisputed any facts set forth by the moving party in affidavits and exhibits." *Bricklayers & Trowel Trades Int'l Pension Fund v. Denver Marble Co.*, No. 16-CV-02065-RM, 2019 WL 399228, at *2 (D. Colo. Jan. 31, 2019) (citing *Purzel Video GmbH v. Biby*, 13 F. Supp. 3d 1127, 1135 (D. Colo. 2014)). It "remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Leider v. Ralfe*, No. 01 Civ. 3137 (HB) (FM), 2004 WL 1773330, at *7 (S.D.N.Y. July 30, 2004) (quoting *In re Indus. Diamonds Antitrust Litig.*, 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000)).

Additionally, courts are required to make an independent determination of the amount of damages to be awarded, unless the amount of damages is certain. *Ullico Cas. Co. v. Abba Shipping Lines, Inc.*, 891 F. Supp. 2d 4, 7 (D.D.C. 2012) (citing *Int'l Painters & Allied Trades Indus. Pension Fund v. Davanc Contracting, Inc.*, 808 F. Supp. 2d 89, 94 (D.D.C. 2011)). "In instances where the amount of damages is not certain, the court may hold a hearing, but is not required to do so as long as there is a basis for determining damages for purposes of the default judgment." *Id*. (citing *Flynn v. Extreme Granite, Inc.*, 671 F. Supp. 2d 157, 160 (D.D.C. 2009)).

For instance, courts need not conduct a hearing "if the amount claimed is a liquidated sum or one capable of mathematical calculation." *Eighth Dist. Elec. Pension Fund v. Campbell Elec., Inc.*, No. 16-cv-03040-CMA, 2017 WL 1243059, at *2 (D. Colo. Mar. 17, 2017) (quoting *Hunt v. Inter–Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985)). In making an independent determination of the amount of damages, "the court may rely on detailed affidavits or documentary evidence." *Id*. (quoting *Breaking the Chain Found., Inc. v. Capitol Educ. Supp., Inc.*, 589 F. Supp. 2d 25, 28 (D.D.C. 2008)); *Lopez v. Highmark Constr., LLP*, No. 17-cv-01068-CMA-MLC, 2018 WL 1535506, at *3 (D. Colo. Mar. 29, 2018) (same).

In the context of a default judgment, a plaintiff "must . . . establish that on the law it is entitled to the relief it requests, given the facts as established by the default." *PHL Variable Ins. Co. v. Bimbo*, No. 17-CV-1290 (FB) (ST), 2018 WL 4691222, at *2 (E.D.N.Y. Aug. 30, 2018), *report and recommendation adopted*, No. 17-CV-1290 (FB) (ST), 2018 WL 4689580 (E.D.N.Y. Sept. 28, 2018) (quoting *Trs. of the Plumbers Local*

4

*Union No. 1 Welfare Fund v. Generation II Plumbing & Heating, Inc.*, No. 07CV5150 (SJ) (SMG), 2009 WL 3188303, at *2 (E.D.N.Y. Oct. 1, 2009)).

### III.     ANALYSIS

Following a clerk's entry of default, courts follow two steps before granting default judgment. First, a court must ensure it has subject matter and personal jurisdiction. *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986); *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011) (holding that default judgment against defendant over whom court has no personal jurisdiction is void). Second, courts must consider whether the well-pleaded allegations of fact—which are admitted by a defendant upon default—support a judgment on the claims against the defaulting defendant. *See Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016) (plaintiff in a default action did not need to prove complaint's factual allegations; however, judgment must be supported by a sufficient basis in the pleadings).

**A.     JURISDICTION**

    1.     Subject Matter Jurisdiction

Federal question jurisdiction is governed by 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Plaintiffs' cause of action arises under ERISA, a federal law, which provides, in relevant part, that "the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter. . . ." 29 U.S.C. § 1132(e)(1). Because Plaintiffs' cause of action arises under federal law, this Court has jurisdiction.

2.  Personal Jurisdiction

The Court must also determine that Plaintiffs have made a *prima facie* case that exercising personal jurisdiction over Defendant is proper. *Dennis Garberg and Assocs., Inc. v. Pack-Tech Int'l. Corp.*, 115 F.3d 767, 773 (10th Cir. 1997). An analysis of personal jurisdiction involves a two-step inquiry. First, the Court must address the adequacy of service in deciding whether it has personal jurisdiction over Defendant. *Reg'l Dist. Council v. Mile High Rodbusters, Inc.*, 82 F. Supp. 3d 1235, 1241 (D. Colo. 2015). Second, the Court must examine whether the exercise of such statutory jurisdiction comports with constitutional due process demands. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

   a.  Service of Process

First, the Court finds that Plaintiffs' service of process on Defendant was complete and adequate. Defendant Green Energy Foundations, LLC is a limited liability company, and service upon a limited liability company may be accomplished "by delivering a copy of the summons and of the complaint to an officer, managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ." Fed. R. Civ. P. 4(h)(1)(B). Additionally, 29 U.S.C. § 1132(e)(2) provides for nationwide service of process in the instant case, stating, in relevant part, that "process may be served in any other district where a defendant resides or may be found." Plaintiffs served Defendant in Minnesota on October 21, 2019, via private process server, who delivered a copy of the Summons, Complaint, and Consent/Non-Consent to the Exercise of Jurisdiction by a United States Magistrate Judge to

Defendant's Manager and Owner, Bill Barnes, at Defendant's registered office. *See* (Doc. ## 6, 6-1). Therefore, Plaintiffs completed service upon Defendant in accordance with Fed. R. Civ. P. 4(h)(1)(B) and 29 U.S.C. § 1132(e)(2).

    b.    Due Process

Next, the Court must consider whether exercising personal jurisdiction over Defendant would comport with due process. In federal question cases, personal jurisdiction flows from the Due Process Clause of the Fifth Amendment. *Peay*, 205 F.3d at 1210 (citing *Omni Capital Int'l., Ltd., v. Rudolph Wolff & Co.*, 484 U.S. 97, 103–04 (1987)). The Supreme Court has not yet defined Fifth Amendment due process limits on personal jurisdiction; however, "[t]he Due Process Clauses of the Fourteenth and Fifth Amendments are virtually identical," and "both were designed to protect individual liberties from the same types of government infringement." *Peay*, 205 F.3d at 1211.

To comport with due process limitations under the Fourteenth Amendment, a court may only exercise personal jurisdiction over defendants that have sufficient minimum contacts with the forum state. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The "minimum contacts" test may be met in either of two ways—general jurisdiction or specific jurisdiction. *Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th Cir. 1996). A court's duty is the same in either case: to guarantee that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (quoting *Int'l Shoe*, 326 U.S. at 316) (internal quotation omitted). Jurisdiction is

proper where "actions by the defendant himself" establish a "substantial connection" with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

As pertinent in the instant suit, specific jurisdiction exists if a three part inquiry is satisfied: (1) the defendant purposefully avails itself of the privilege of acting in Colorado or of causing important consequences in the state; (2) the cause of action arises from the consequences of the defendant's in-state activity; and (3) the defendant's activities, or the consequences thereof, have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Sho Servs., LLC v. China Film Grp. Corp.*, No. 17–cv–01200–CMA–KLM, 2018 WL 2183987, at *2 (D. Colo. May 11, 2018).

In the instant action, Plaintiffs have established that Defendant is subject to specific jurisdiction in Colorado. First, Defendant has purposefully availed itself of the state's laws. In evaluating purposeful availment, the Court considers the quality and nature of the contacts with Colorado. *Id.* Physical presence is not required, and a single act may be enough. *Id.* The following well pled facts are sufficient to support purposeful availment in this case:

- Defendant manifested its acceptance of the terms of the CBAs and Trust Agreements through a letter of assent. (Doc. # 10-3 at 2.)
- Due to the CBAs and Trust Agreements, Defendant was obligated to make monthly benefit contributions to the Plaintiff Funds. (*Id.*)
- Plaintiffs Pension Fund and Annuity Plan are administered in the state of Colorado. Plaintiffs NEBF and JATC are administered for collections

        purposes within the state of Colorado. (*Id*. at 1.)

- Defendant filed reports with the Plaintiff Funds' Colorado-based administrator indicating that Defendant owes contributions to the Plaintiff Funds for the months of February through July 2018. (*Id*. at 3.)

These facts support the conclusion that Defendant contracted with entities it reasonably knew were located in Colorado. Consequently, Defendant reasonably knew that Plaintiffs would suffer the effect of its failure to pay fringe contributions in Colorado. Thus, Plaintiffs' well pled allegations are sufficient to support that Defendant purposefully availed itself of the forum state. *See Carpenters Sw. Admin. Corp. v. GSF Enters., Inc.*, No. SA CV 17–0115–DOC (JCGx), 2017 WL 7833775, at *4 (C.D. Cal. July 13, 2017) (finding purposeful availment in the context of a default judgment where the defendant knew that the plaintiffs would suffer the effect of its failure to pay fringe contributions in the forum state).

    Second, the Court also finds that Plaintiffs' claim for relief clearly arises from the consequences in Colorado of Defendant's activities. Defendant contracted with the Plaintiff Funds, entities administered in Colorado, and breached those contracts by failing to produce the agreed-upon contributions. Defendant's breach of contract has caused and is causing economic loss in Colorado. *Sho Servs.*, 2018 WL 2183987, at *3. The economic ramifications at issue here support a finding that Plaintiffs' cause of action emanates from Defendant's conduct aimed at Colorado. *Id.*

    Third, the Court finds that Defendant's contacts have a substantial enough connection with Colorado to make the exercise of jurisdiction reasonable. *Sho Servs.*,

2018 WL 2183987, at *3. Defendant agreed to make payments in Colorado, and its failure to do so has caused financial harm in Colorado. This connection is not so isolated or attenuated that the establishment of jurisdiction would be unjust. *See World–Wide Volkswagen Corp.*, 444 U.S. at 299.

Pursuant to the foregoing analysis, Plaintiffs have met their burden to establish that exercising personal jurisdiction over Defendant is proper.

**B.     DEFAULT JUDGMENT**

It is manifest from the record that Defendant has defaulted. Plaintiffs served Defendant via private process server on October 21, 2019. (Doc. ## 6, 6-1.) Defendant has nevertheless failed to answer or otherwise respond to the Complaint, and the time to do so has expired. *See* Fed. R. Civ. P. 12(a). The Clerk, therefore, properly entered a certificate of default against Defendant on November 25, 2019. (Doc. # 9.)

2.      Liability

Plaintiffs seek recovery under § 515 of ERISA, 29 U.S.C. § 1145. (Doc. # 10 at 2.) Section 515 provides: "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

"[A]ny ERISA obligations of [Defendant] flow from the existence of recognizable contractual legal obligations." *Bricklayers & Trowel Trades Int'l Pension Fund v. Denver Marble Co.*, No. 16-CV-02065-RM, 2019 WL 399228, at *3 (D. Colo. Jan. 31, 2019) (citing 29 U.S.C. § 1132(a) ("A civil action may be brought . . . to recover benefits due to

him under the terms of his plan, to enforce rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.")); *see also Mile High Rodbusters*, 82 F. Supp. 3d at 1240 (granting the plaintiffs' motion for default judgment and finding that the defendants' delinquency pursuant to a collective bargaining agreement supported judgment on the ERISA claims). Therefore, Plaintiffs may only recover under ERISA if they have adequately alleged a violation of the CBA by Defendant.[1]

Accepting the well-pled allegations in the Complaint as true and for the reasons stated below, the Court finds that the allegations support entry of default judgment against Defendant. Plaintiffs assert that Defendant agreed to the CBAs and Trust Agreements that obligated Defendant to pay contributions to the Plaintiff Funds. (Doc. # 1 at 3–4.) Plaintiffs further assert that Defendant has failed to pay all contributions, plus accrued interest and liquidated damages, owed to Plaintiffs. *See* (*id.* at 4–6). Defendant's failure to send the required contributions and accrued interest is a breach of its obligations under the CBA and is a violation of § 515 of ERISA, 29 U.S.C. § 1145. (*Id.* at 4–5.) Under §§ 515 and 502(g) of ERISA, 29 U.S.C. §§ 1145 and 1132(g)(2), Defendant is obligated to pay the full amount of its delinquent contributions under the

---

[1] Although Plaintiffs fail to attach a copy of any of the CBAs to their briefing, when considering default judgments under ERISA, it is not "strictly necessary" to attach the CBA. This is especially true when the amount of damages alleged in the complaint are well pleaded allegations that support default. *See, e.g.*, *Denver Marble Co.*, 2019 WL 399228, at *3; *see also Bd. of Trustees, Colo. Sheet Metal Workers' Local 9 Family Health Plan v. J & C Stainless Fabricating Co.*, No. 07-cv-01970-REB-MEH, 2009 WL 306731, at *2 (D. Colo. Feb. 6, 2009) (entering default judgment without a copy of such an agreement). Because there are no discrepancies within Plaintiffs' briefing that obfuscate the damage calculation, the Court does not require a copy of the CBAs at issue here.

terms of the CBA, plus interest, and additional damages. (*Id.* at 5.)

Because the Court deems the well-pleaded facts of the Complaint to be true, Plaintiffs have established that Defendant failed to pay the required contributions and interest. Accordingly, entry of default judgment against Defendant is proper.

3. <u>Relief</u>

In addition to finding that Plaintiffs have a basis for relief, default judgment may not be entered until the amount of damages has been ascertained. *See Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984). In the instant action, Plaintiffs assert their claim is for a sum certain. (Doc. # 10 at 2.)

Plaintiffs seek relief under § 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), which "requires that the Court award all unpaid contributions to any fund when a fiduciary brings an action to recover contributions under § 515 of the statute." *Boilermaker Blacksmith Nat. Pension Fund v. Fluidynamics Int'l, LLC*, No. CIV.A. 09-2041-KHV, 2009 WL 1559783, at *1 (D. Kan. June 1, 2009). Section 502(g)(2) provides as follows:

> In any action under this title by a fiduciary for or on behalf of a plan to enforce § 515 in which a judgment in favor of the plan is awarded, the court shall award the plan:
>
> (A)   the unpaid contributions,
> (B)   interest on the unpaid contributions,
> (C)   an amount equal to the greater of:
>   (i)  interest on the unpaid contributions, or
>   (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D)   reasonable attorney's fees and costs of the action, to be paid by the defendant, and

>> (E) Such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under § 6621 of the Internal Revenue Code of 1954.

29 U.S.C. § 1132(g)(2).

Plaintiffs seek relief under Sections (A) through (E) of the statute. (Doc. # 10 at 5–6.) It is notable that §§ (A)-(D) are mandatory. 29 U.S.C. § 1132(g)(2) (stating that "the court **shall** award . . ." (emphasis added)). Plaintiffs note that they will file an additional motion addressing attorneys' fees and costs, and do not seek specific relief under § (E). (*Id.* at 8.)

### a. Unpaid Contributions

With respect to unpaid contributions, Plaintiffs assert that Defendant failed to make the necessary contributions to the Plaintiff Funds under the CBAs and Trust Agreements for the months of February through July 2018. (Doc. # 1 at 4–5); *see* 29 U.S.C. § 1132(g)(2)(A). The delinquent payments for these six months totals $17,176.48, which Plaintiffs seek to recover in the instant action. (Doc. # 10 at 5); (Doc. # 10-3 at 3).

Plaintiffs sufficiently substantiate their assertions regarding Defendant's unpaid contributions with the Affidavit of Sandra G. Brown. (Doc. # 10-3.) Ms. Brown is employed by CompuSys of Colorado, Inc. ("CompuSys") and served as the Delinquency Coordinator for Plaintiff Pension Fund, which collects contributions for all of the Plaintiff Funds, until April 1, 2020. (*Id.* at 1–2.); *see* (Doc. # 16-1 at 1). Ms. Brown states that

13

Defendant filed reports for the months of February through July 2018 indicating that it owed contributions to Plaintiffs, and an audit of Defendant discovered additional contributions owed. This yielded a total of $17,176.48 in unpaid contributions. (*Id.* at 3.) Plaintiffs also submit a statement of Defendant's account with CompuSys as of December 3, 2019. (*Id.* at 6.) The statement further demonstrates that Defendant owes the Plaintiff Funds contributions for the months of February through July 2018 in the amount of $17,176.48. (*Id.*)

Plaintiffs have thus provided the Court with proof of the damages amount. This amount does not exceed the $17,176.48 requested in the Complaint. *See* Fed. R. Civ. P. 54(c). Therefore, entering judgment against Defendant in the amount of $17,176.48 in unpaid contributions is warranted.

### b.   Interest on Unpaid Contributions

With respect to interest on unpaid contributions, pursuant to the CBAs and Trust Agreements, Defendant is liable to Plaintiffs Pension Fund, Annuity Plan, and JATC for interest at the rate of the Federal short-term interest rate for underpayment, plus 2%. (Doc. # 1 at 5); (Doc. # 10-3 at 3); *see* 29 U.S.C. § 1132(g)(2)(B). Defendant is liable to Plaintiff NEBF at the interest rate of 10% annually, compounded monthly. (*Id.*)

In their Complaint, Plaintiffs initially sought $2,096.12 in interest, plus interest accruing after the Complaint was filed. (Doc. # 1 at 6–7.) In their Motion for Default Judgment, Plaintiffs request $2,136.70 in interest on unpaid contributions. (Doc. # 10 at 6.) Most recently, in their Supplemental Brief in Support of Motion for Default Judgment, Plaintiffs seek to recover the total interest due as of the date of entry of judgment, which

is $2,652.43. *See* (Doc. # 16 at 2). Plaintiffs provide evidence through the Affidavit of Stefanie Sneed and the statement of Defendant's account with Benesys, Inc. ("BeneSys")[2] that the total interest due as of May 5, 2020, is $2,652.43. (Doc. # 16-1 at 3–4, 6) (demonstrating the total amount of interest owed as of April 30, 2020, is $2,639.07 and the per diem is $3.34); *see also* (Doc. # 10-3 at 4, 6) (evidence of interest due as of December 1, 2019). Therefore, entering judgment against Defendant in the amount of $2,652.43 for interest accrued upon the unpaid contributions is warranted. *See Mile High Rodbusters*, 82 F. Supp. 3d at 1245 (relying on an affidavit submitted with the plaintiffs' motion for default judgment to determine a sum certain calculation of interest accrued on delinquent CBA payments).

        c.      *Liquidated Damages*

Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), and the Trust Agreements, Defendant also owes Plaintiffs liquidated damages. Plaintiffs provide evidence through Ms. Brown's Affidavit that Defendant owes Plaintiffs Pension Fund, Annuity Plan, and JATC liquidated damages at the rate of 10% of the delinquent contributions and owes Plaintiff NEBF liquidated damages at the rate of 20% of the delinquent contributions. (Doc. # 10-3 at 3–4, 6.) According to Ms. Brown and the statement of Defendant's account with CompuSys, this yields a total of $2,247.81 in liquidated damages. (*Id.*) Therefore, entering judgment against Defendant in the amount of $2,247.81 for liquidated damages is warranted.

---

[2] The Plaintiff Funds transitioned from CompuSys to a new third-party administrator, BeneSys, effective April 1, 2020. (Doc. # 16-1 at 1.) Stefanie Sneed is employed by BeneSys. (*Id.*)

### d.   Audit Costs

Lastly, pursuant to the Trust Agreements of Plaintiff Funds, which are incorporated into the CBAs, Defendant is also liable for the costs of the audit the Plaintiff Funds undertook to determine the extent of Defendant's delinquency. According to Ms. Brown, the Plaintiff Funds incurred $1,175.00 in audit costs. (Doc. # 10-3 at 4.) Entering judgment against Defendant in the amount of $1,175.00 for audit costs is warranted.

## IV.   CONCLUSION

For the foregoing reasons, the Court ORDERS that Plaintiffs' Motion for Default Judgment Pursuant to Fed. R. Civ. P. 55(b)(1) (Doc. # 10) is GRANTED. Plaintiffs are entitled to a total judgment of $23,251.72 in damages, consisting of:

(1) principal contributions due for the months of February through July 2018 in the amount of $17,176.48;

(2) interest in the amount of $2,652.43, in accordance with 29 U.S.C. § 1132(g)(2);

(3) liquidated damages in the amount of $2,247.81, in accordance with 29 U.S.C. § 1132(g)(2); and

(4) audit costs in the amount of $1,175.00, in accordance with the Trust Agreements and CBAs.

The Clerk of Court is DIRECTED to enter final judgment in favor of Plaintiffs and against Defendant in the amount of $23,251.72. It is

FURTHER ORDERED that post-judgment interest shall accrue as provided by 28 U.S.C. § 1961 from the date of entry of judgment.

DATED: May 5, 2020

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge